# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**RICKY OTERO and CARLOS OTERO JR.,**

      **Plaintiffs,**

vs.                                                       **No.**

**CITY OF GRANTS and DETECTIVE SERGEANT COREY WHITE, a Grants Police Department Officer,**

      **Defendants.**

## COMPLAINT TO RECOVER DAMAGES FOR DEPRIVATIONS OF FEDERAL CIVIL RIGHTS AND FOR VIOLATIONS OF THE NEW MEXICO TORT CLAIMS ACT

COME NOW Plaintiffs Ricky Otero and Carlos Otero Jr., by and through their attorneys of record, KENNEDY KENNEDY & IVES, PC, and bring this Complaint to recover damages pursuant to 42 U.S.C. Sec. 1983 and the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 et seq. In support of this Complaint, Plaintiffs state as follows:

### PARTIES, JURISDICTION AND VENUE

1. Jurisdiction and venue are proper in federal district court for the State of New Mexico.

2. All acts complained of herein occurred in Cibola County, State of New Mexico.

3. Plaintiffs Ricky Otero ("Ricky") and Carlos Otero Jr. ("Carlos") are individuals who reside in the city of San Fidel, Cibola County, State of New Mexico.

4. Defendant City of Grants is a municipality located within the territorial limits of Cibola County, State of New Mexico.

5. Defendant Detective Sergeant Corey White ("Defendant White") is an individual who at all material times herein was employed as a law enforcement officer by the Grants Police

Department in Cibola County, State of New Mexico.

6. Defendant White is sued in his individual capacity and was acting under color of law and within the scope of his duties and employment at all times material herein.

7. Plaintiffs provided timely notice of their claims to Defendant City of Grants pursuant to Section 41-4-16 of the New Mexico Tort Claims Act.

8. Immunity is waived by Section 41-4-12 of the New Mexico Tort Claims Act.

## FACTUAL BACKGROUND

9. On April 22, 2020, at approximately 9:06 p.m., Ricky stopped at a stop sign on High Street, in Grants, New Mexico.

10. Ricky was on his way to the Wells Fargo Bank on First Street to take money out from the ATM for his son, Carlos.

11. While Ricky was stopped at the stop sign, Carlos pulled up next to his father.

12. Ricky and Carlos began speaking to one another about the money Ricky was about to withdraw from the ATM.

13. While they were speaking, Ricky noticed flashing lights coming from a red pick-up truck parked in the Wells Fargo parking lot across the street.

14. The red pick-up truck was Defendant White's unmarked police vehicle.

15. Confused by the flashing lights coming from the red pick-up truck, Ricky told his son that they should move their vehicles.

16. Before Ricky and Carlos had a chance to move their vehicles, Defendant White hopped the curb of the Wells Fargo parking lot and drove directly towards them.

17. Once Defendant White was directly behind Ricky's car, he ordered Ricky to "get the fuck off the road."

18. Defendant White did not announce that he was a police officer with the Grants Police Department when he told Ricky to "get the fuck off the road."

19. Carlos pulled into the Wells Fargo parking lot unaware Defendant White was a police officer with the Grants Police Department.

20. Ricky exited his vehicle to speak with his son.

21. Defendant White followed Ricky and Carlos from the stop sign back into the Wells Fargo parking lot and parked his red pick-up truck in between their vehicles.

22. With his Taser drawn, Defendant White exited his vehicle and yelled at Ricky that he could not be outside of his vehicle.

23. Defendant White yelled repeatedly at Ricky to get back inside his vehicle.

24. Defendant White rushed at Ricky and pointed his Taser while he yelled to get back inside of his vehicle.

25. Calmly and with his hands to his sides, Ricky asked Defendant White what this was about.

26. Screaming, Defendant White responded, "impeding traffic!"

27. Perplexed, Ricky asked, "impeding traffic?"

28. Defendant White yelled once again, "Get back in your vehicle."

29. Attempting to gain clarification, Ricky once again asked Defendant White, "impeding traffic?"

30. Defendant White, still screaming, ordered Ricky to get back inside his vehicle.

31. When Ricky did not get back inside his vehicle, Defendant White said, "well go to jail then."

32. Defendant White reached for Ricky and grabbed him by his shoulder and arm.

33. Ricky tried to push Defendant White off of him, but Defendant White began to punch him

in the head with a closed fist.

34. Defendant White pulled Ricky back and forth before he slammed him into his vehicle, causing a visible dent.

35. At his father's request, Carlos began to film the incident.

36. Once Defendant White had Ricky on the ground, he pointed his Taser at Carlos.

37. Defendant White aimed his Taser at Carlos and ordered him to get on the ground.

38. Carlos told Defendant White the man on the ground was his father.

39. Carlos also told Defendant White he was meeting his father because Ricky was giving him money from the bank.

40. Defendant White responded that they could have done this, "without going over the line."

41. Ricky, who was still on the ground, explained he and his son were not blocking traffic.

42. Carlos also told Defendant White that he and his father were trying to get money out at the bank.

43. Defendant White responded that Carlos needed to get in his car and leave or he would be going to jail too.

44. Carlos told Defendant White he had every right to be there as it was his father who was lying on the ground.

45. Defendant White continued to loudly proclaim that Carlos was, "going to jail too."

46. Defendant White also yelled repeatedly that Carlos and his father, "do not run the city."

47. Defendant White then pulled Ricky's hands behind his back and began to handcuff him.

48. While Defendant White handcuffed him, Ricky asked what he had done wrong.

49. In an attempt to close Ricky's car door, Carlos took a couple steps forward.

50. Defendant White yelled at Carlos not to approach him.

51. With his hands on the vehicle's door, Carlos told Defendant White that this was not right and that he had no reason to take him to jail.

52. Defendant White grabbed Carlos, slammed him into the side of the car and handcuffed him.

53. Carlos' body caused a visible dent on the car.

54. Additional Grants Police Department officers arrived on the scene.

55. A Grants Police Department officer told Ricky to calm down, as he grabbed his coat and pushed him to walk forward.

56. As Ricky was being escorted to a police unit, the Grants Police Department officer also told him to "shut up and walk."

57. Ricky asked the officer to clarify what he meant by "shut up and walk."

58. The officer pulled the hood of Ricky's jacket.

59. The hood of the jacket wrapped around Ricky's neck.

60. The officer then pushed him away.

61. As he watched his father being escorted to a police unit in handcuffs, Carlos explained how Defendant White had damaged his car by slamming him into the side of it for no reason as he was meeting his dad and trying to go to work.

62. Several Grants Police Department officers carried Carlos to the police car, as he was too injured to walk without assistance.

63. Ricky was charged with resisting and obstructing a police officer and possession of drug paraphernalia.

64. Neither Ricky or Carlos were told whether they were under arrest or were being detained.

65. All charges against Ricky and Carlos were subsequently dismissed.

## COUNT I: BATTERY

66. Plaintiffs incorporate by reference the preceding paragraphs as though they were stated fully herein.

67. Defendant White detained Plaintiffs without legal justification or probable cause.

68. Defendant White battered Ricky when he punched him in the head multiple times and slammed him into his own vehicle.

69. Defendant White's actions towards Ricky constituted a non-consensual touching with no legal justification.

70. Defendant White also battered Carlos when he slammed him into his own vehicle.

71. Defendant White's actions towards Carlos constituted a non-consensual touching with no legal justification.

72. As a result of Defendant White's actions, Plaintiffs suffered injuries.

## COUNT II: RIGHT TO BE FREE FROM UNREASONABLE SEIZURES

73. Plaintiffs incorporate by reference the preceding paragraphs as though they were stated fully herein.

74. Pursuant to the Fourth Amendment to the United States Constitution Plaintiffs have and had a right to be free of detention without reasonable suspicion, to be free of arrest without probable cause and to be free of criminal charges without probable cause.

75. Pursuant to Section 41-4-12 of the New Mexico Tort Claims Act, New Mexico has waived sovereign immunity for tortious acts of law enforcement officers, including violations of state constitutional rights.

76. Article II, Section 10 of the New Mexico Constitution prohibits law enforcement officers from unreasonably seizing individuals without reasonable suspicion or probable cause.

77. By demanding that Plaintiffs leave their vehicles when they had not committed and were not committing any crime, Defendant White unreasonably seized Ricky and Carlos under both federal and state law.

78. When Defendant White unreasonably seized Plaintiffs, he diminished their ability to consent as he told them they were not free to return to their vehicles which would have enabled them to leave.

79. Defendant White unreasonably seized Plaintiffs when he aimed his Taser at Ricky and Carlos and demanded they leave their vehicles and remain at the scene.

80. Even though Ricky calmly exited his vehicle to ask Defendant White why he was following him, Defendant White ordered him on the ground.

81. Plaintiffs did not impede traffic by talking to one another while at a stop sign as there were no cars on the road.

82. Defendant White's arrest of Plaintiffs lacked probable cause and deprived them of their federal and state constitutional right to be free of unreasonable seizures.

83. Plaintiffs' arrests for resisting and obstructing a police officer and possession of drug paraphernalia lacked probable cause, as Defendant White was not in the lawful discharge of his duties and any physical resistance to an unlawful arrest cannot be used to justify an arrest.

84. The City of Grants is responsible under respondeat superior under state law for the violation of state constitutional law and the common law.

85. Defendant White acted with reckless disregard of Plaintiffs' rights.

86. Plaintiffs suffered harm as a result of their arrest, jailing and responding to criminal charges.

## COUNT III: EXCESSIVE USE OF FORCE

87. Plaintiffs incorporate by reference the preceding paragraphs as though they were stated fully herein.

88. The Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution provides that Plaintiffs have a right to be free of unreasonable seizures with excessive force.

89. The force Defendant White used against Plaintiffs was unreasonable, unnecessary and excessive.

90. This force included recklessly slamming Ricky and Carlos into their vehicles and punching Ricky in the head and unnecessarily pointing a taser at the Plaintiffs.

91. Plaintiffs suffered harm as a result of the excessive force.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs seek the following relief:

I. Actual and compensatory damages sufficient to make Plaintiffs whole against Defendants;

II. Damages for Plaintiffs' pain and suffering and loss of enjoyment of life;

III. Punitive damages against Sergeant White for his reckless disregard of Plaintiffs' rights;

IV. Litigation expenses, costs, pre- and post-judgment interest as provided by law; and

V. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**KENNEDY KENNEDY & IVES, PC**

*/s/ Joseph P. Kennedy*
Joseph P. Kennedy
Adam C. Flores
1000 2nd Street NW
Albuquerque, New Mexico 87102
505-244-1400 / Fax (505) 244-1406

jpk@civilrightslaw.com
acf@civilrightslaw.com

*Attorneys for Plaintiffs*